# UNITED STATES CIRCUIT COURT
## DISTRICT OF OREGON
### PORTLAND DIVISION

*FILED*
*17 JAN 27 PM 1:01*
*CIRCUIT COURT*
*FOR MULTNOMAH COUNTY*

| | |
|---|---|
| **Plaintiff:** )<br><br>John Frederick James Jr )<br>)<br>)<br>)<br>**Defendant:** )<br><br>Sapa Extrusions North America )<br>    &     )<br>Egil Hogna (president & CEO) )<br>)<br>) | Complaint for employment discrimination<br><br>**17CV03327**<br><br>Case no. _____<br><br>Jury **trial:** X yes ___ no<br><br>$ 477,360 .00 |

---

## I.  Parties to this complaint:

A.  Plaintiff:

John Frederick James Jr

504 SE 103rd Ave

Vancouver    Clark

(360)334-1502

Washington    98664

jfrederickjames@yahoo.com

B.  Defendant:

Egil Hogna (president & CEO)

6250 N River road

Ste. 5000

Rosemont, IL 60018

(877)710-7272

NorthAmerica.Sales@Sapagroup.com

C.  Defendant:

Sapa Extrusions North America

7320 NE 55th Ave

Verified Correct Copy of Original 1/27/2017

Verified Correct Copy of Original 1/27/2017

Portland    Multnomah

Oregon    97218

(503)802-3000

D.  Place of employment:

Sapa Extrusions North America

7320 NE 55th Ave

Portland    Multnomah

Oregon    97218

(503)802-3000

## II.  Basis for Jurisdiction:

This action is brought for discrimination in employment pursuant to;

1.  X Federal law (specify the federal law)  42 USC 2000e – (a)(Title VII); 29 USC 157,158(a)(1); Protection of former & current employees from retaliation, unfair labor practice of termination.

2.  X Relevant state law (specify, if known)ORS659A.030(1)(f);ORS243.672(1); ORS 659A..199 – 659A.236; Protection for previous and present employees, protection for items work related and non-work related, protection for filing against an individual for unlawful acts. RCW 49.60.210; RCW 41.56.140; Protection for whistle blowing by reporting of theft and/or reporting criminal activity.

3.  X  Other – Robinson vs. Shell Oil Co.; 519 US 337,117, S ct 843,136 L Ed 2d 808(1997); Burlington Northern & Santa Fe Ry Co. vs. White; 548 US 53,63,126 S ct 2405, 165 L Ed 2d 345(2006)

## III.    STATEMENT OF CLAIM

Following is a short and brief statement of the claim.  Stated briefly, with no legal argument, only the facts, showing that the plaintiff is entitled to the damages or other relief sought.  This will show how the defendants were involved and what each person did that caused harm or violated the plaintiffs rights, including the dates and places of that involvement or conduct.

*I had given plans to the warehouse manager that ended up in the wrong hands. These plans were to fix problems with the spraybooth. After being threatened by my co-worker (October 10) to not show up for work on the following day, I showed up anyway and was met in the parking lot by three men, (Gregorio, Paul and Vern). These men threatened me with bodily harm and spit on my vehicle as I left,*

Verified Correct Copy of Original 1/27/2017

telling me not to come back. On the 10th of October I phoned Sam Gress to speak with him. He said he would come talk to me in a few minutes but he left anyway. So when I attempted to call him again I did not receive an answer or return call. Once I contacted our union representative I applied for unemployment at his suggestion but I was initially denied. On October 23rd I received a letter from Sapa stating I was being considered a voluntary quit for missing three or more unreported days. Once I proved to the ALJ that my allegations were correct I won my appeal. Once she received an electronic notice letting her know that I had won the appeal, Diana Zolotko (HR Manager at Sapa) sent a letter full of accusations and slanderous statements attempting to discredit and defame me. This letter is proof that the things I've said are true regarding the three men meeting me in the parking lot on the 11th of October, also of Paul Robison sending me home with out the proper authority or permission, as well as proof of Gregorio telling me not to come in on a day that we were all required to be there. It also proves that my allegations regarding the issues at work not being properly investigated by Pam Muehleck and Diana Zolotko and Bill Elzie.

(See attached)

**A.** The discriminatory conduct of which I complain in this action includes  (check all that apply).

___ Failure to hire me.

**X** Termination of my employment.

___ Failure to promote me.

___ Failure to accommodate my disability.

**X** Unequal terms and conditions of my employment.

**X** Retaliation.

___ Other acts (specify)._____

(Note; Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

**B.** It is my best recollection that the alleged discriminatory acts occurred on the following date(s).
October 9th, 10th & 11th _____

**C.** I believe that the defendant(s) (check one)

**X** is/are still committing these acts against me.

___ is/are not still committing these acts against me.

**D.** The facts of my case are as follows.

_Verified Correct Copy of Original 1/27/2017_

In July I showed Jeff Baliss, (boss in laminating) and Scott (lift driver) the sweeper batteries had not been changed, although green card sheet stated changed June 18, 2015. Jeff showed Sam Gress the completed Green card sheet and said, "That's a lie! Something needs to be done about this! Aprox 8/1/15 – 8/5/15 – gave 2 new sets of plans to fix the spray booth of over spraying. plans in hands of maintenance workers. Told, "That's what we think of your plans!" as waded up and thrown away. *Didn't realize then that it would have pointed out that the overspray problem and the problem of the warehouse filling with smoke never got fixed. October 10, 2015 – Gregorio told me not to come in the following day. Told him I would be there anyway. He said, "Boy, your just looking to get hurt aren't you?" I contacted Sam Gress regarding being told not to come in and being threatened. He said he would come out and see me in a few minutes. Sam Gress left with out stopping to talk to me. Went home and called Sam again. He refused to answer and never called me back. October 11, 2015 – To work to meet 3 men in the parking lot. Three men met me in the parking lot; Vern Wilson, Gregorio (work partner), Paul Robison, Gregorio said, "I told you not to show up. Vern said, "What's it take a bad accident for you to get hurt or something before you realize no one wants you here?" Vern Wilson spit on my van and yelled, "Don't come back!" as I left the parking lot. I contacted the Union Rep, Bill Elzie about my job and the incident. With in days Bill suggested I get my unemployment going because an investigation could take a while. I applied for unemployment. I received a letter of denial from unemployment. October 23, 2015 - Recieved letter from Sapa stating I was being considered a voluntary quit for missing (unreported) three or more working days. Letter stated last day worked was Oct 9, 2015, Termination was final October 10, 2015. I proved by means of last pay stub, Last day paid for was Oct 10 and I had 18.7 hours overtime for a total 58.7 hours from Oct 5 thru Oct 10. After being denied I won my appeal with unemployment. Diana Zolotko, (HR Manager at Sapa) and Bill Elzie (union rep) set up a meeting telling me it was to put me back to work. Diana had received by electronic notice, result of hearing being in my favor. Using the information she received, she wrote and sent to the review board a list of false claims and allegations that were slanderous, with malice and with the intent of keeping me from returning to any form of employment with Sapa, when the rules from the review board clearly state that the board will only consider information entered at the hearing. In this letter is proof of the assault from Vern Wilson spitting on my vehicle, Paul Robison attempted to send me home with out the proper authority or permission to do so. It proves that my allegations were not properly investigated by Diana Zolotko, Pam Muehleck or Bill Elzie and ultimately proves that I was wrongfully terminated for retaliation for being a whistleblower. Also being entered into evidence will be the CD received from the ALJ, which is inclusive of preceedings from the administrative hearing.

## IV.  EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendants alleged discriminatory conduct on (date)  Filed a case with BOLI in July 2016.

B.  The Equal Employment Opportunity Commission (check one)

   __ has not issued a Notice of Right to Sue Letter.

   X has issued a Notice of Right to Sue Letter.

Verified Correct Copy of Original 1/27/2017

## V.  RELIEF

**A.** *In order to punish and deter such wrongful conduct Sapa Extrusions North America should be ordered to pay damages in an amount to exceed $100,000 to be decided & proven at trial and an award of all available damages, including actual, consequential, statutory, special & punative damages, plus pre- & post judgement interest, in an amount to be proven at trial in excess of $100,000 An award for pain & suffering due to the loss of dental & medical insurance needed for my wife when urgent need arose. When resulting failure to care for her needs correctly led to extensive pain & infection due to lack of coverage. Any other proper & reasonable relief as deemed necessary by the courts.*

## VI. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harrass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For parties with out an attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: January 21, 2016____.

Signature of Plaintiff _s/John Frederick James Jr___
Printed Name of Plaintiff _John Frederick James Jr_

**Statement of claim:**

The following is a statement of events that occurred shortly before the incident that lead up to the wrongful termination and is an explaination why this case is also considered retaliatory in nature:

*July-* Showed Jeff Baliss, (boss in laminating) and Scott (lift driver) the sweeper batteries had not been changed, although green card sheet stated changed *June 2015.*
Jeff showed Sam Gress the completed Green card sheet and said, "That's a lie! Something needs to be done about this!"

*Aprox 8/1/15 – 8/5/15* – gave 2 new sets of plans to fix the spray booth of over spraying. plans in hands of maintenance workers. Told, "That's what we think of your plans!" as waded up and thrown away.
   *Didn't realize then that it would have pointed out that the overspray problem and the problem of the warehouse filling with smoke never got fixed.

*Late September 2015* - Pam Muehleck asked for the completed green card sheet at the 'Sapa safety days' event.

*I.) October 7, 2015* – Took the completed green card sheet down for Pam. When maintenance found out the sheet was gone, I began to receive threats.
   1). *October 10, 2015* – Gregorio told me not to come in the following day. Told him I would be there anyway. He said, "Boy, your just looking to get hurt aren't you?"
   2). Contacted Sam Gress regarding being told not to come in and threatened. He said he would come out and see me in a few minutes.
   3). Sam Gress left with out stopping to talk to me.
   4). Called Pam Muehleck to speak about Sam leaving before we could talk, found out she would be on vacation from October *5th till the 19th of October, 2015.*
   5). Went home and called Sam again. He refused to answer and never called me back.
   6). *October 11, 2015* – To work to meet 3 men in the parking lot.
      A.) Three men met me in the parking lot;
         1. Vern Wilson, Gregorio (work partner), Paul Robison
            a.) Gregorio said, "I told you not to show up."
            b.) Vern said, "What's it take a bad accident for you to get hurt or something before you realize no one wants you here?"
            c.) Vern Wilson spit on my van.
            d.) Vern Wilson yelled, "Don't come back!" as I left the parking lot.

Soon after *October 11, 2015;*
Contacted the Union Rep, Bill Elzie about my job and the incident.
With in days Sam suggested I get my unemployment going because an investigation could take a while. Applied for unemployment.
Received a letter of denial from unemployment.
*Aprox October 23, 2015* called Pam Muehleck again to find out if she had received the packet of papers I left for her.
*October 23, 2015* - Recieved letter from Sapa stating I was being considered a voluntary quit for missing (unreported) three or more working days. Letter stated last day worked was *Oct 9, 2015,* Termination was final *October 10, 2015.*
Proved by means of last pay stub; last day paid was *October 10, 2015;* and I had *18.7* hours overtime for a total *58.7* hours from *Oct 5 thru Oct 10.*
After being denied I won my appeal with unemployment.
Diana Zolotko, (HR Manager at Sapa) and Bill Elzie (union rep) set up a meeting telling me it was to put me back to work.
Diana had received by electronic notice, result of hearing being in my favor. Using the information she received, she wrote and sent to the review board a list of false claims and allegations that were

Verified Correct Copy of Original 1/27/2017

_ Verified Correct Copy of Original 1/27/2017 _

slanderous, with malice and with the intent of keeping me from returning to any form of employment with Sapa, when the rules from the review board clearly state that the board will only consider information entered at the hearing.

In this letter is proof of the assault from Vern Wilson spitting on my vehicle, Paul Robison attempted to send me home with out the proper authirity or permission to do so.  It proves that my allegations were not properly investigated by Diana Zolotko, Pam Muehleck or Bill Elzie.